IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 08-299 |
| MALIK SNELL | : | |

**SURRICK, J.**  **OCTOBER  18 , 2013**

## MEMORANDUM

Presently before the Court is Defendant Malik Snell's Motion for New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (ECF No. 252.) For the following reasons, Defendant's Motion will be denied.

**I.   BACKGROUND[1]**

Defendant, a former Philadelphia police officer, participated in two robberies of drug dealers. The first robbery occurred on December 14, 2007. Around noon that day, Ricardo McKendrick, Jr. was driving in south Philadelphia and had with him a diaper bag containing $40,000 in illegal drug proceeds. As McKendrick made a turn, he heard a horn and noticed that a black car behind him had activated police-style lights. Believing he was being pulled over for a moving violation by a police officer in an unmarked car, McKendrick stopped his minivan on the side of the street.

Snell, who was at the time a Philadelphia police officer, emerged from the black car

---

[1] The factual background is taken primarily from the Third Circuit opinion, which affirmed Defendant's conviction and sentence on direct appeal. *See United States v. Snell*, 432 F. App'x 80, 81 (3d Cir. 2011).

wearing his full police uniform, which included a holstered gun. He approached McKendrick's car, opened the door, pulled McKendrick out, and then handcuffed him and patted him down. During the pat down, Snell took $130 out of McKendrick's pocket and put it into his own. Snell also told McKendrick that federal agents had told him to stop McKendrick, and he asked whether McKendrick had any weapons or drugs in his car. McKendrick insisted that he had neither, but Snell proceeded to search McKendrick's car while continuing to ask McKendrick about weapons and drugs.

After that initial search, Snell placed McKendrick in the backseat of Snell's car without closing the door. Snell then returned to McKendrick's car and resumed the search. He soon emerged with the diaper bag and placed it in the trunk of his car.

Moments later, McKendrick overheard Snell on his cell phone relating these or similar words: "Yeah, I got it right here. We–I got him right here. Hurry up." Hearing that, and noting Snell's apparent disregard for police protocol, McKendrick began to fear for his safety and tried to flee. Snell blocked him and forced him back into the backseat. In forcibly detaining McKendrick, Snell used his right hand to push McKendrick while keeping his left hand on his waist near his holstered gun.

After forcing McKendrick back into the backseat, Snell again searched McKendrick's car. He then abruptly stopped searching, returned to his car, removed McKendrick from the backseat, placed him on the curb still in handcuffs, and drove off at a high speed. About an hour later, after a phone call from a bystander, the police arrived and released McKendrick from the handcuffs. McKendrick then reported his encounter with Snell and his having been robbed of $130, but he did not at that time report the $40,000 being stolen, for fear of alerting the police to

his drug dealing.

The second robbery for which Snell was convicted occurred two days later on December 16, 2007. Late that evening, Snell, his brother-in-law Tyree Aimes, and Stephen Gibson drove in Snell's Dodge Durango to an apartment in Pottstown, Pennsylvania, where they had heard that approximately $10,000 in illegal drug proceeds was stored. Snell had his personal firearm with him.

When the three men arrived at the Pottstown apartment, they saw two police cars parked at the apartment building. After driving past the building twice, Snell and his two accomplices proceeded to a nearby convenience store where they planned to wait until the police had left the vicinity. A few minutes later, they returned to the apartment and found that the police cars were gone. Aimes and Gibson then began searching for a back window through which they could enter the apartment that they believed contained the money. They were unsuccessful and returned to the Durango to inform Snell of that fact. In response, Snell told them to knock on the front door and, once it was opened, to enter the apartment and tie up the occupants.

Aimes and Gibson returned to the front door and knocked twice. After the second knock, the male occupant, Stephen Stackhouse, opened the door, and Aimes immediately began fighting with Stackhouse, while Gibson entered the apartment. Gibson found the female occupant, Sharon Ann Minnick, in the bedroom. Gibson tied Minnick up, rummaged through her closet, and then left. Aimes and Stackhouse eventually stopped fighting, and Aimes ran back to the Durango.

Snell and Aimes circled the block in the Durango three times looking for Gibson but sped away when the police arrived. The police pursued them on an extended high speed chase at

speeds of over one hundred miles per hour until the Durango crashed into a smaller vehicle and careened to a stop at the side of an intersection. The passenger in that vehicle suffered permanent injuries as a result of the crash. Snell and Aimes fled on foot. Snell was apprehended a short while later after a K-9 officer and his dog tracked him to a small shed at a nearby residence where he was hiding.

After being taken into custody and advised of his *Miranda* rights, Snell told the Pottstown police officers that he was a Philadelphia police officer and he had been carjacked and kidnapped. Once at the police station, Snell provided a detailed written statement to that effect. However, roughly two hours later, after seeing Aimes being escorted through the station by police, Snell retracted his statement and gave a new one. In his new statement, Snell recounted the evening's events basically as described above, but he asserted that he had simply driven Aimes to Pottstown by request and was ignorant of the intended robbery.

In May 2008, based on the Pottstown robbery, a grand jury indicted Snell, along with Aimes and Gibson, on one count of conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951 ("Count One"); one count of attempted interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951 ("Count Two"); one count of carrying a firearm during or in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) ("Count Three"); and aiding and abetting, in violation of 18 U.S.C. § 2. Aimes and Gibson both entered pleas of guilty. Snell proceeded to trial. Aimes cooperated with the government and testified against Snell at trial.

Snell's first trial, in October 2008, ended in a mistrial after the jury failed to reach a verdict on any of the counts. A grand jury subsequently indicted Snell again on Counts One,

Two, and Three and added new counts for violations of 18 U.S.C. § 1951 ("Count Four") and 18 U.S.C. § 924(c) ("Count Five") stemming from the McKendrick robbery. The grand jury also added one count of witness retaliation, in violation of 18 U.S.C. § 1513 ("Count Six"). Snell's second trial, in March 2009, resulted in an acquittal on Counts Five and Six and a mistrial on the remaining counts.

In June 2009, Snell was tried again on Counts One through Four. During trial, the jury heard evidence of the McKendrick and Pottstown robberies as described above. The jury returned a guilty verdict on all Counts. Snell did not move for a judgment of acquittal based on the sufficiency of the evidence or for a new trial.[2]

In November of 2009, Snell was sentenced to 360 months incarceration. In explaining the sentence, we noted Snell's Marine Corps service and past commendable police service but noted also that Snell had failed to acknowledge his criminal actions, had perjured himself repeatedly, had damaged the reputation of the Philadelphia Police Department, and had otherwise failed to acknowledge "the people that [he'd] hurt."

Defendant filed an appeal. On July 15, 2011, the Third Circuit affirmed the judgment of conviction and the sentence. On May 15, 2012, Defendant filed the instant Motion. (Def.'s Mot., ECF No. 252.) The Government filed a response. (Gov't's Resp., ECF No. 257.) Defendant filed a reply. (Def.'s Reply, ECF No. 259.)

---

[2] At Snell's second and third trials, the Government introduced evidence under Federal Rule of Evidence 404(b) regarding three other uncharged robberies of drug dealers that Snell either committed or planned.

5

## II.     DISCUSSION

### A.     Newly Discovered Evidence

In his Motion, Defendant claims that he is entitled to a new trial based upon newly discovered evidence. Defendant also claims that the Government withheld exculpatory and impeachment evidence in violation of *Brady* and *Giglio*. Defendant's claims are frivolous.

Federal Rule of Criminal Procedure 33 provides that: "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment . . . Any motion for a new trial grounded on newly discovered evidence must be filed within three (3) years after the verdict or finding of guilty." Fed. R. Crim. P. 33. The Third Circuit has set forth five requirements that must be met before a court may grant a new trial on the basis of newly discovered evidence. These requirements are as follows:

> (a) [T]he evidence must be in fact newly discovered, i.e., discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Gov't of Virgin Islands v. Lima*, 774 F.2d 1245, 1250 (3d Cir. 2000) (citing *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976)). While the decision to grant or deny a motion for a new trial lies solely within the discretion of the district court, "the movant has a 'heavy burden' of proving each of these requirements." *United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006). As such, "[c]ourts should 'exercise great caution in setting aside a verdict reached after fully-conducted proceedings,' and particularly so where 'the action has been tried before a jury.'"

*United States v. Kelly*, 539 F.3d 172, 182 (3d Cir. 2008) (quoting *United States v. Kamel*, 965 F.2d 484, 493 (7th Cir. 1992)). If the defendant cannot prove each requirement, the court should deny the motion for a new trial. *See United States v. Jasin*, 280 F.3d 355, 365 (3d Cir. 2002).

To establish a *Brady* violation, Defendant must show that (1) evidence was suppressed, (2) the suppressed evidence was favorable to him, and (3) the suppressed evidence was material either to his guilt or to his punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005). Under *Giglio v. United States*, 405 U.S. 150 (1972), "the government must disclose materials that go to the question of guilt or innocence as well as materials that might affect the jury's judgment of the credibility of a crucial prosecution witness." *United States v. Friedman*, 658 F.3d 342, 357 (3d Cir. 2011) (quoting *United States v. Milan*, 304 F.3d 273, 287 (3d Cir. 2002)). Failure to do so is a *Giglio* violation.

**B.   Parties' Arguments**

Defendant seeks a new trial based on newly discovered evidence pursuant to Rule 33. Specifically, Defendant argues that on December 22, 2011, he was served with a civil complaint filed in the Eastern District of Pennsylvania by Stephen Stackhouse and Sharon Minnick, which evidenced that the Government had withheld exculpatory and impeachment evidence, in violation of *Brady* and *Giglio*.

The Government responds that the evidence Defendant claims is newly discovered was discoverable by Defendant before trial. The Government contends that Defendant had to know that the victims of the assault and attempted robbery had the right to file a civil action against him for damages. With the exercise of reasonable diligence Defendant could have determined their intentions. (Gov't's Resp. 18-20.) Moreover, the Government argues that the pending civil

7

litigation was immaterial because the defense did not dispute that Minnick was robbed as she described and because Stackhouse did not testify at trial. (*Id.*)

**C.     Analysis**

*1.     Discoverable Pretrial*

In determining whether evidence is "newly discovered" for the purposes of a Rule 33 motion, district courts engage in an objective and subjective analysis to ascertain whether the evidence "was [actually] known or could have been known by the diligence of the defendant or his counsel." *Cimera*, 459 F.3d at 461. As such, "[i]t is the substance—not the source—of evidence that concerns the Court when making the judgment whether it is 'newly discovered.'" *United States v. Davis*, No. 05-482, 2011 WL 5025113, at *2 (D.N.J. Oct. 21, 2011). Therefore, the question with respect to whether the evidence is truly "newly discovered" is whether Defendant knew or should have known about the underlying information. *Id.*

The Government is correct that the civil litigation was discoverable pretrial. A notice of intent to file a civil lawsuit was filed by Stackhouse and Minnick in 2008. As the Government observes, defense counsel never inquired of Minnick at trial regarding any pending litigation or her desire to recover civil damages against Defendant or his confederates. Defendant also failed to inquire of the City of Philadelphia as to whether there was any pending civil litigation related to the robbery. Defendant has failed to establish that the evidence could not have been discovered with the exercise of reasonable diligence before the trial.

*2.     Evidence Would Not Have Led to an Acquittal*

In any event, even if this evidence was newly discovered, Defendant must establish that the evidence would probably have led to an acquittal. *See United States v. Lowery*, 294 F. App'x

698, 699 (3d Cir. 2008) (finding that the discovery of two documents, a lease termination notice and housing authority letter, was unlikely to be considered "newly discovered" and that the evidence would probably not have produced an acquittal); *United States v. Thornton*, 258 F. App'x 432, 434 (3d Cir. 2007) (affirming decision of district court in denying a Rule 33 motion where a report may have provided additional impeachment evidence, but where the court could not conclude that the evidence would probably have produced an acquittal); *United States v. Saada*, 212 F.3d 210, 217-18 (3d Cir. 2000) (finding that district court did not abuse its discretion in concluding that new evidence failed to meet the requirement that it would probably have produced an acquittal).

Defendant does not establish that this evidence probably would have resulted in an acquittal. He merely states that it would as a certainty. The jury heard the testimony of Minnick and was able to assess her credibility. As the Government argues, Minnick's testimony merely provided undisputed evidence that the December 17, 2007 robbery took place. She did not identify Defendant as one of the assailants who invaded her home. Moreover, her testimony merely corroborated the testimony of cooperating co-Defendant Tyree Aimes. The idea that Minnick's pecuniary interest in the outcome of this trial was the difference between conviction and acquittal is ludicrous. Minnick's pecuniary interest was, at most, impeaching evidence. Moreover, Stackhouse did not testify at trial. Any purported monetary interest in the outcome of the trial on his part had no bearing on Defendant's trial or conviction. Defendant argues that he could have called Stackhouse as a hostile witness at trial to attack his pretrial misidentification of Defendant as one of the assailants who physically invaded the home. (Def.'s Reply 11.) Even if defense counsel had employed this tactic, it would not have resulted in an acquittal. Evidence of

Stackhouse's misidentification would not remove Defendant from the scene of the robbery and would not have negated the testimony of co-Defendant Aimes.

"[W]hen evaluating whether the evidence is likely to produce an acquittal, the court considers the new evidence in light of all the evidence presented at trial." *United States v. Yan Zhu*, No. 09-722, 2011 WL 3422861, at *12 (D.N.J. Aug. 4, 2011) (quoting *United States v. Mensah*, 434 F. App'x 123, 127 (3d Cir. 2011)). The evidence supporting Defendant's conviction was overwhelming. The defense did not dispute that the December 17, 2007 robbery took place—rather, they contend that Defendant was present, but unaware that Aimes intended to rob the home. That theory is belied by the record. Minnick's testimony and account of the robbery was confirmed by the testimony of Aimes. Aimes' testimony established Defendant's knowing and intentional participation in the crime. Defendant attempted to evade police by driving at speeds of up to 100 mph and hiding in a shed after causing the car crash. Defendant intentionally lied to the police with regard to the events of that night. Moreover, the evidence regarding the McKendrick robbery was compelling. The evidence of Defendant's guilt was truly overwhelming. Any pecuniary interest that Minnick or Stachhouse may have had in the outcome of the trial clearly would not have led to a different result. Defendant has failed to meet the heavy burden for a Rule 33 motion.

        3.    *Brady and Giglio*

Finally, Defendant contends that the Government failed to advise him with regard to the Notice of Intent to file a civil law suit filed by Stackhouse and Minnick in June of 2008 in violation of *Brady* and *Giglio*.

The Government responds that it was not aware of the fact that such a Notice was filed.

The Government points out that it is not a party in this civil litigation and was never notified with regard to it. Clearly, the Government cannot provide Defendant with documents or information that it does not have in its possession and of which it has no knowledge. There has been no violation of *Brady* or *Giglilo* here.

III.  CONCLUSION

For these reasons, Defendant's Motion will be denied.

An appropriate Order will follow.

BY THE COURT:

R. BARCLAY SURRICK, J.